UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**John Edward Schomaker**

    **v.**                                    Case No. 07-cv-164-PB
                                           Opinion No. 2008 DNH 100
**United States of America,**
**Arnold H. Huftalen,**
**John/Jane Doe(s)**

## MEMORANDUM AND ORDER

Law enforcement agents temporarily seized property from John Schomaker in connection with his arrest and prosecution. After Schomaker was convicted, however, the U.S. Attorney's Office for the District of New Hampshire failed to return the property and eventually destroyed it. Schomaker now seeks compensation for the retention and destruction of that property. The parties have filed cross motions for summary judgment. For the reasons explained below, I grant defendants' motion and deny Schomaker's motion.

## I.   BACKGROUND

In April of 1997, pursuant to a court-ordered search warrant, law enforcement personnel seized property from

Schomaker's house in connection with his arrest and prosecution on child pornography–related charges.  The property consisted of computer equipment, computer storage media, photographs, videotapes, books, papers, and miscellaneous office equipment and supplies.[1]

On November 13, 1997, in the U.S. District Court for the District of New Hampshire, Schomaker pled guilty to all of the charges against him; judgment was entered on February 18, 1998. Although a dispute between Schomaker and the government exists regarding how much of the property was unreturnable contraband, the government concedes that at least some of it should have been returned to Schomaker after the underlying criminal prosecution concluded.[2]  None of the property was ever the subject of any forfeiture proceedings.

On or about the date of Schomaker's conviction, Schomaker's father agreed to rent the seized personal property from Schomaker

---

[1] The property may have also included one or more film cameras; the record contains conflicting information on this point.

[2] Schomaker has filed a motion to strike Assistant U.S. Attorney Arnold Huftalen's assertion that "much" of the property was unreturnable contraband.  I need not resolve this motion because both parties agree that at least some of the property was not contraband.

-2-

at a rate of $20/month until Schomaker's release from prison. Because the property was never released to either Schomaker or his father, however, Schomaker never received any rental income.

Schomaker filed a voluntary bankruptcy petition in October 1997. In connection with that petition, he stated, "Any property I own has been taken as evidence by [the] U.S. Marshal as evidence in a pending case. This includes my computer, printer, monitor, and camera." In March of 1998, the bankruptcy court granted Schomaker a "no asset" discharge.

In June of 1998, Schomaker's trial counsel prepared and Schomaker signed an authorization for release of his property. Counsel forwarded a request to have Schomaker's property released to his parents, along with the signed authorization, to the U.S. Attorney's Office on July 9, 1998. Assistant U.S. Attorney Arnold Huftalen admits that he received this letter on July 13, 1998. Neither Schomaker nor his attorney ever received a reply, however, and Huftalen cannot recall whether he took any action in response to the letter. At unspecified later times, Schomaker wrote follow-up letters that appear to have been similarly ignored.

Additionally, beginning in 1997 and repeating at least once per year, Schomaker's father contacted "either the U.S. Marshals Office in New York and New Hampshire, or the U.S. Attorneys Office in New York and New Hampshire" to request the return of Schomaker's property.  Schomaker's father testifies that in response to these inquiries, he was assured that "the matter will be looked into and that Affiant will be contacted once Defendant's property is located."

On December 14, 2005, Schomaker moved for return of his property pursuant to Fed. R. Crim. P. 41(e).  On April 26, 2006, the government opposed Schomaker's Rule 41(e) motion as untimely and asserted that the property had accidentally been destroyed during the U.S. Attorney's Office's move to a new location in 2003.  On May 9, 2006, the court dismissed Schomaker's Rule 41 motion.

On May 15, 2006, and June 6, 2006, Schomaker filed administrative tort claims for money damages; both were subsequently denied on August 7, 2007.

On June 1, 2007, Schomaker filed his complaint in the instant case.  He asserted claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., the U.S. Constitution

under Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971), and New Hampshire state law.  Per
this court's local rules, Magistrate Judge Muirhead conducted a
preliminary review of Schomaker's complaint.  Magistrate Judge
Muirhead directed service of Schomaker's FTCA claims on the
United States.  He also directed service of Schomaker's <u>Bivens</u>
claims, which allege that Schomaker's property was withheld in
violation of the Fourth Amendment's protection against
unreasonable seizures and destroyed in violation of the Due
Process Clause of the Fifth Amendment.  Finally, he directed
service of Schomaker's state law claims against the individual
defendants insofar as they allege negligence or recklessness
rather than willful behavior.

## II.  <u>STANDARD OF REVIEW</u>

Schomaker has filed a Motion for Summary Judgment.
Defendants have filed a Motion to Dismiss or for Summary
Judgment, which I treat as a motion for summary judgment.
Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and

-5-

that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A party seeking summary judgment must
first establish that the facts that are material to the
resolution of the motion are not in genuine dispute.  Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving
party has properly supported her motion for summary judgment, the
burden shifts to the nonmoving party, with respect to each issue
on which he has the burden of proof, to demonstrate that a trier
of fact reasonably could find in his favor.  DeNovellis v.
Shalala, 124 F.3d 298, 306 (1st Cir. 1997); see Celotex, 477 U.S.
at 323.  "At this stage, the nonmoving party 'may not rest upon
mere allegation or denials of [the movant's] pleading, but must
set forth specific facts showing that there is a genuine issue'
of material fact as to each issue upon which he would bear the
ultimate burden of proof at trial."  DeNovellis, 124 F.3d at 306
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256
(1986)).  The test is whether there is "sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party.  If the evidence is merely colorable or is not
significantly probative, summary judgment may be granted."  Id.
(quoting Anderson, 477 U.S. at 249-50).

-6-

### III.  <u>ANALYSIS</u>

Schomaker has raised <u>Bivens</u> claims against the individual defendants asserting Fourth and Fifth Amendment violations; state law claims against the individual defendants; and FTCA claims against the United States.[3]  I address each in turn.

### A.  <u>Fourth Amendment *Bivens* Claim Against Individual Defendants</u>

No federal statute specifies the statute of limitations that should apply to a <u>Bivens</u> action.  Instead, courts use whatever statute of limitations would apply in an analogous 42 U.S.C. § 1983 action against state officials.  <u>Roman v. Townsend</u>, 48 F. Supp. 2d 100, 104 (D.P.R. 1999) (borrowing from § 1983 jurisprudence to identify the appropriate statute of limitations for a <u>Bivens</u> action), <u>aff'd</u>, 224 F.3d 24 (1st Cir. 2000); <u>see also</u> <u>Butz v. Economou</u>, 438 U.S. 478, 500-01 (1978) (describing the policy rationale for applying the same standards applied in § 1983 actions against state officials to <u>Bivens</u> actions against

---

[3] It bears noting that, unlike many pro se litigants, Schomaker has paid considerable attention to the important task of making his pleadings readable and well-organized.  Each argument is clearly linked to the causes of action he raised in his original complaint, and he presents his arguments in a clear, logical manner.  Other prisoners who file pro se suits would do well to follow his example in this respect.

federal officials).

Section 1983 claims, in turn, borrow the forum state's statute of limitations for personal injury claims. Wallace v. Kato, 127 S. Ct. 1091, 1094 (U.S. 2007); Lopez-Gonzalez v. Municipality of Comerio, 404 F.3d 548, 551 (1st Cir. 2005). In New Hampshire, the general personal injury statute of limitations is three years. N.H. Rev. Stat. Ann. § 508:4. Thus, both § 1983 and Bivens actions are subject to a three-year limitation period in New Hampshire.

The accrual of a Bivens claim is governed by federal law. Lopez-Gonzalez, 404 F.3d at 551. Under federal law, the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis for his action. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005). In this inquiry, the proper focus is on the time of the injurious act itself, not the point at which its consequences become painful. See id.

### 1.    **Accrual**

Schomaker's Fourth Amendment claim (count 6) arises from the government's allegedly wrongful retention of Schomaker's property. Accordingly, the statute of limitations began to run

-8-

once Schomaker became aware of the government's wrongful retention of his property.  See Altair Corp. v. Pesquera de Busquets, 769 F.2d 30, 32 (1st Cir. 1985) ("In a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation."); see also Berry v. Keller, 157 Fed. Appx. 227, 229 (11th Cir. 2005) (unpublished) (holding that where a prisoner filed suit under § 1983 to recover property he claimed was forfeited unconstitutionally, the statute of limitations began to run, at the latest, after the prisoner received notice of the forfeiture); Schaefer v. Stack, 641 F.2d 227, 228 (5th Cir. 1981) (holding that where a prisoner filed suit under § 1983 to recover property seized from him pursuant to a search warrant and retained by the state after his conviction, the statute of limitations began to run after the government failed to return the property following his conviction).

In this case, the U.S. Attorney's Office admits that it should have returned the property promptly upon the completion of Schomaker's criminal case, or at least upon Schomaker's request after the completion of the case.  Schomaker was clearly aware that the government had failed to return his property when he

signed the authorization to release his property.  Thus, the
latest point at which the statute of limitations could have
started running is when, despite having received Schomaker's
request for release of the property and his signed authorization,
the U.S. Attorney's Office failed to take steps to release that
property to Schomaker's father.  That took place on July 13,
1998.  Accordingly, unless something acted to equitably toll the
statute of limitations, Schomaker's time for filing a <u>Bivens</u>
action based on a Fourth Amendment violation expired three years
later, on July 14, 2001.[4]

>     **2.    <u>Equitable Tolling</u>**

Schomaker argues that the statute of limitations should have
been equitably tolled until April 2006, when, in its opposition
to Schomaker's Rule 41 motion, the U.S. Attorney's Office
revealed that it had accidentally destroyed Schomaker's property.
He advances two potential bases for his tolling claim: (1)

---

[4] Schomaker argues in the alternative that the subsequent
destruction of his property constituted a fresh injury.  As
explained above, however, the statute of limitations began to run
upon the invasion of Schomaker's property interest, which began
when the U.S. Attorney wrongfully failed to return his property
despite having received a signed authorization for its release.
<u>See</u> <u>Altair</u>, <u>769 F.2d at 32</u>.  The later destruction of his
property was merely a consequence of that first wrongful act.

Schomaker did not know who was inflicting the injury until April 2006, and (2) defendants fraudulently concealed the status of Schomaker's property from him until April 2006.

In the First Circuit, it remains an open question whether equitable tolling with respect to claims of this sort should be governed by state doctrines or federal doctrines. Vistamar, 430 F.3d at 72 (§ 1983 claims). Thus, I examine Schomaker's argument according to both state and federal doctrines of equitable tolling. The federal standard for equitable tolling applies if the plaintiff has shown "excusable ignorance of the statute of limitations caused by some misconduct of the defendant." Vistamar, 430 F.3d at 72 (quoting Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998)). The New Hampshire standard for equitable tolling applies if the prospective plaintiff "did not have, and could not have had with due diligence, the information essential to bringing suit." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 624 (2005). Regardless of which standard I apply, however, neither of Schomaker's arguments for equitably tolling the statute of limitations can succeed. See Neverson v. Farquharson, 366 F.3d 32, 42 (1st Cir. 2004) ("Equitable tolling ... is the exception

rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances." (quoting Donavan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002))).

Schomaker's first asserted basis for tolling fails because it is premised on an overly pessimistic view of what he might have been able to accomplish during discovery had he filed suit earlier.  From at least 1998 onward, although Schomaker did not necessarily know which particular individuals had custody of his property, he was aware that his property remained in law enforcement custody despite his multiple requests to return the property, knew that AUSA Huftalen was the prosecutor responsible for his underlying criminal case, knew that AUSA Huftalen was based in the U.S. Attorney's Office for the District of New Hampshire, and -- because of the rental agreement between him and his father -- could show he was suffering actual harm as a result of the government's failure to return the property.  This information alone would have provided a sufficient basis for Schomaker to file suit before the statute of limitations expired. The fact that he did not know where exactly his property was being held is immaterial.

Schomaker's second asserted basis for tolling fails because it is not supported by sufficient evidence.  Schomaker has failed to proffer any evidence suggesting that anyone from the U.S. Attorney's Office, the FBI, or any state law enforcement agencies actively concealed the fate of Schomaker's property from him.  As to Schomaker's letters (both individually and through counsel), defendants simply failed to reply to Schomaker's inquiries. Although ignoring Schomaker's requests in this manner was hardly commendable, it did not actually prevent Schomaker from timely filing suit, see Neverson, 366 F.3d at 42; their silence was merely a passive failure to act rather than any active effort to conceal the government's continued detention of Schomaker's seized property.  See Ramirez Morales v. Rosa Viera, 815 F.2d 2, 4 (1st Cir. 1987) (holding that equitable tolling was inappropriate in a § 1983 case where defendants neither prevented nor discouraged plaintiffs from viewing agency records that cast doubt on the legality of a police shooting), overruled on other grounds by Carreras-Rosa v. Alves-Cruz, 127 F.3d 172 (1st Cir. 1997).

Similarly, the affidavits of Schomaker's father do not provide a reasonable basis for concluding that the government

engaged in the kind of misconduct necessary to justify equitable tolling.  Schomaker's father was told that the matter would be "looked into," but not that his son's property would actually be returned.  Thus, there is no evidence that any government employee misled Schomaker's father as to the location or ultimate fate of Schomaker's property.  Making all reasonable inferences in Schomaker's favor, the officials' responses to his father's inquiries were polite brush-offs that carried, at most, a noncommittal suggestion of possible future action, which is not enough to meet the strict requirements for equitable tolling based on fraudulent concealment.  See Vistamar, 430 F.3d at 72 (holding that where defendants merely failed to inform plaintiff of certain relevant records, there was no basis for concluding that they wrongfully concealed those records from plaintiff); Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 102 (1st Cir. 1979) (holding that there was no fraudulent concealment of an alleged political conspiracy to fire plaintiff from his job where nobody made misrepresentations to plaintiff that would "throw [him] off the trail" of the alleged conspiracy).  Accordingly, Schomaker has failed to meet the federal standard for equitable tolling.  See Vistamar, 430 F.3d at 72.

-14-

Schomaker has also failed to meet the New Hampshire standard for equitable tolling.  Defendants' refusal to respond to Schomaker and their noncommittal responses to his father did not prevent Schomaker from obtaining the information essential for him to timely file suit; he had this information in hand and had three years in which he could have acted upon it.  See Portsmouth Country Club, 152 N.H. at 624.

In the absence of any equitable tolling, then, Schomaker's time for filing a Bivens suit based on his alleged Fourth Amendment violation expired on July 14, 2001.  Because he did not file suit before that date, his claim is barred.

**B.   Fifth Amendment _Bivens_ Claim Against Individual Defendants**

To the extent that Schomaker's Fifth Amendment claim (count 5) contests the government's failure to return his property, his Fifth Amendment claim is barred by the statute of limitations for the same reasons as his Fourth Amendment claim.  To the extent that he alleges the government _destroyed_ his property without due process, however, his injury at least arguably occurred when the government destroyed his property.[5]  Thus, I assume without

---

[5] In an affidavit, AUSA Huftalen stated his belief that this destruction occurred during the U.S. Attorney's Office's relocation in June of 2003.  Schomaker has moved to strike that

deciding that this portion of his Fifth Amendment claim ("the destruction-based Fifth Amendment claim") accrued in April 2006, when Schomaker first had reason to know that his property was destroyed.  I now turn to the merits of that claim.

Schomaker alleges that he was deprived of his personal property in violation of the Fifth Amendment because AUSA Huftalen and one or more property officers failed to protect his property from destruction and failed to give him notice of its impending destruction.  He argues that their conduct was knowing, reckless, or at least negligent because they knew that the government possessed Schomaker's property yet failed to take any steps to protect it from certain destruction.

Negligence alone cannot result in a violation of one's right to due process.  Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").  "To hold that injury caused by such conduct is a deprivation within the meaning of the

portion of Huftalen's declaration, arguing that it is not based upon Huftalen's personal knowledge.  I need not resolve Schomaker's motion to strike because I decide Schomaker's destruction-based Fifth Amendment claim on the merits, rendering any disputes over the timing of the destruction moot.

-16-

Fourteenth Amendment would trivialize the centuries-old principle of due process of law." Id. at 332.  Thus, his destruction-based Fifth Amendment claim would fail as a matter of law if predicated on mere negligence.  See id. at 330-31.

Depending on the circumstances, some forms of reckless or intentional conduct might be able to support a due process claim, assuming that the claim was otherwise valid.  See Daniels, 474 U.S. at 334 n.3 (withholding judgment on the question of whether reckless conduct could trigger the protections of the Due Process Clause).  In this case, however, the evidence, when viewed in the light most favorable to Schomaker, merely shows that AUSA Huftalen ignored letters inquiring into the status of Schomaker's property.  There is no evidence that he knew of a substantial risk that the property would be destroyed and then disregarded that risk.  Indeed, even assuming that Schomaker's letters placed Huftalen on notice of the fact that Schomaker's property remained somewhere in federal custody, there is no evidence that Huftalen knew where the property was being stored or how it might be affected by, for example, the office relocation.  As for the Doe defendants, there is no evidence that they were even aware of Schomaker's letters.  Thus, to the extent it alleges reckless or

intentional conduct, Schomaker's destruction-based Fifth Amendment claim fails because it has no evidentiary support.

## C.   <u>**State Law Claims Against Individual Defendants**</u>

The FTCA is the exclusive remedy for negligent or wrongful acts committed by any federal employee while acting within the scope of his or her office or employment.  28 U.S.C. § 2679(b)(1).  "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred."  Id.  Thus, to the extent that Schomaker asserts state law claims for damages against AUSA Huftalen or other individuals for actions performed within the scope of their employment, these claims should be folded into his FTCA claim and the United States should be substituted as the sole defendant.

As to AUSA Huftalen, the United States Attorney for the District of New Hampshire has certified that Huftalen was acting within the scope of his employment at all times relevant to Schomaker's allegations.  The accuracy of such a certification is reviewable by the court, <u>see</u> <u>Gutierrez de Martinez v. Lamagno,</u> <u>515 U.S. 417, 436-37 (1995)</u>, guided by the *respondeat superior*

law of the state in which the incident occurred.  See Aversa v. United States, 99 F.3d 1200, 1208-09 (1st Cir. 1996).  Under New Hampshire law, an employee's conduct falls within the scope of his employment if "(1) it is of the kind she is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer."  Porter v. City of Manchester, 155 N.H. 149, 152 (2007).

Schomaker makes two main arguments as to why Huftalen's conduct did not fall within the scope of his employment.  First, Schomaker argues that Huftalen's conduct fell outside the scope of his employment because that conduct allegedly violated duties that Huftalen owed both to his employer and to Schomaker.  This argument fails as a matter of law.  Even if Schomaker could clearly establish that Huftalen's conduct was negligent or reckless, that would not be sufficient to bring his conduct outside the scope of his employment.  See Daigle v. City of Portsmouth, 129 N.H. 561, 581 (1987) (holding, in the context of allegations that a police officer used excessive force, that "neither the malice of the employee, nor the tortiousness or criminality of his conduct" necessarily brings the employee's

-19-

acts outside the scope of his employment).  Second, Schomaker argues that Huftalen's conduct was outside the scope of his employment because it was not actuated by a desire to serve his employer.  Although this could be a viable theory if supported by sufficient evidence, Schomaker has failed to proffer anything more than conclusory allegations in support of this argument. Thus, Schomaker's second argument fails because it lacks supporting evidence.

As to the Doe defendants, Schomaker argues only that they performed their jobs negligently or recklessly, which is not enough to bring their acts outside the scope of their employment. See Daigle, 129 N.H. at 581.

I therefore conclude that, based on the evidence presently before me, no reasonable fact-finder would determine that either AUSA Huftalen or the Doe defendants were acting outside the scope of their employment.  For this reason, an FTCA suit against the United States is the exclusive avenue by which Schomaker may pursue state law claims for damages based on the actions of Huftalen or the Doe defendants.  See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006).

**C.    <u>FTCA Claims Against the United States</u>**

Under the FTCA's limited waiver of the federal government's sovereign immunity, a plaintiff must file an administrative claim within two years after the accrual of the claim.  28 U.S.C. § 2401(b); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).  If the plaintiff does not do so, then his FTCA suit must be dismissed.  "[C]ompliance with this statutory requirement is a jurisdictional prerequisite to suit that cannot be waived."  Id.

The accrual of Schomaker's FTCA claim is governed by federal law.  United States v. Kubrick, 444 U.S. 111, 118 (1979).  Like his <u>Bivens</u> claims, Schomaker's FTCA claim accrued when he discovered, or in the reasonable exercise of diligence should have discovered, the factual basis for his cause of action.  Id. at 121-24; Gonzalez, 284 F.3d at 288.

For the reasons discussed above, Schomaker's state law claims must be folded into his FTCA claims.  Thus, Schomaker now asserts the following claims under the FTCA: (1) conversion,[6] (2)

---

[6] Schomaker refers to this as his "trover and conversion" claim.  In earlier centuries, "trover" was a particular form of tort action alleging conversion.  <u>See</u> Restatement (Second) of Torts § 222A cmt. a (1965) (discussing the origins and history of the old common law action of trover).  In modern usage, however, trover is indistinguishable from conversion.  For the sake of clarity, I therefore refer to Schomaker's "trover and conversion"

theft by misapplication of property, and (3) common-law fraud.[7]
I address each of these potential FTCA claims in turn.

Conversion is "an intentional exercise of dominion or
control over a chattel which so seriously interferes with the
right of another to control it that the actor may justly be
required to pay the other the full value of the chattel." Muzzy
v. Rockingham County Trust Co., 113 N.H. 520, 523 (1973).  As
with Schomaker's Fourth Amendment Bivens claim, the statute of
limitations began running when the U.S. Attorney's Office's
exercise of dominion over the property became wrongful; that is,
when the office ignored Schomaker's 1998 request to release his
property and continued to hold it in their custody.  See
Restatement (Second) of Torts § 237 (1965) ("[o]ne in possession
of a chattel as bailee or otherwise who, on demand, refuses
without proper qualification to surrender it to another entitled
to its immediate possession, is subject to liability for its

_____

claim as a conversion claim.

[7] In Count 7 of his Complaint, Schomaker describes the
latter cause of action as being the "tort of fraudulent
concealment," which is, as defendants point out, not a civil
cause of action.  In his Opposition to Defendants' Motion to
Dismiss or for Summary Judgment, however, Schomaker relies upon
Savitz v. Weinstein, 395 Pa. 173 (1959), as to Count 7.  Savitz
is a case involving common-law fraud.  Accordingly, I construe
Count 7 as asserting common-law fraud.

conversion"); see also Restatement (Second) of Torts § 237 cmt. g
(1965) (noting that refusal to surrender the chattel may be found
by implication from the defendant's conduct).  For the same
reasons that equitable tolling is inappropriate for Schomaker's
Fourth Amendment Bivens claim, equitable tolling is inappropriate
for his conversion claim.  Thus, Schomaker's claim seeking
damages for conversion is barred by the two-year statute of
limitations for filing an administrative claim under the FTCA.

Theft by misapplication of property is a criminal offense
that private citizens have no standing to enforce in a civil
suit.  See N.H. Rev. Stat. Ann. § 637:10.  Thus, this claim fails
as a matter of law, regardless of the statute of limitations.

Under the common law cause of action for fraud, a person who
justifiably relies on the misrepresentations made by another for
the purpose of inducing that person to act or to refrain from
action in reliance upon it, can recover pecuniary losses incurred
as a result of that reliance.  Gray v. First N.H. Banks, 138 N.H.
279, 283 (1994).  "The party seeking to prove fraud must
establish that the other party made a representation with
knowledge of its falsity or with conscious indifference to its
truth with the intention to cause another to rely upon it."  Van

Der Stok v. Van Voorhees, 151 N.H. 679, 682 (2005) (internal
quotations omitted).  Here, however, there is no evidence that
AUSA Huftalen or the Doe defendants ever made such a
misrepresentation.  Rather, they merely failed to respond to
Schomaker at all.  While this can easily support an inference
that the defendants did not plan on returning Schomaker's
property, it cannot reasonably support an inference that they
made any misrepresentations of fact to Schomaker.  Thus, the
statute of limitations never started running on Schomaker's fraud
claim because the triggering event of a fraudulent misrepresen-
tation never occurred.  Without such a misrepresentation,
Schomaker cannot successfully assert fraud by the defendants.


                        IV.  **CONCLUSION**

     Based on the foregoing, even making all reasonable factual
inferences in Schomaker's favor, there is insufficient evidence
from which a reasonable fact-finder could find in Schomaker's
favor.  Accordingly, Defendants' Motion for Summary Judgment
(Doc. No. 29) is granted, and Schomaker's Motion for Summary
Judgment (Doc. No. 9) is denied.  The clerk is directed to enter
judgment accordingly.

                            -24-

SO ORDERED.


                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge

May 13, 2008

cc:  John Edward Schomaker, pro se
     Evan J. Roth, Esq.